[No. 7700–7–I.   Division One.   December 1, 1980.]

CONTINENTAL CASUALTY COMPANY, *Respondent,* v. JOHN
P. DARCH, JR., ET AL, *Appellants.*

*Allerdice & Boyack, Blake Howe,* and *M. Wayne Boyack,* for appellants.

*Lee, Smart, Cook & Martin, David L. Martin,* and *Joel E. Wright,* for respondent.

RINGOLD, J.—John P. Darch, Jr., and Kathleen Darch appeal a summary judgment awarding them $15,000 uninsured motorist coverage but denying additional uninsured motorist coverage under a commercial fleet policy issued by Continental Casualty Company (Continental). We affirm.

John Darch was severely injured in an automobile collision with a negligent uninsured motorist on September 29, 1977. At the time of the accident, Darch was driving a commercial vehicle owned and assigned to him by his employer, Consolidated Beverages, Inc. He filed a claim for uninsured motorist coverage under Consolidated's automobile insurance policy with Continental. This policy covered his employer's fleet of 35 commercial vehicles and 3 privately owned and operated vehicles.

The insurer claimed that its liability was limited to the $15,000 policy limit for the uninsured motorist coverage applicable to the commercial vehicle Darch was driving at the time of the accident. Darch asserted that Continental's potential liability was the sum of the policy limits applicable to each of the vehicles[1] covered by the policy. Continental responded that he was an "insured" only under the coverage provided for the one vehicle he was occupying at the time of the accident. This dispute led to the filing of an action for declaratory relief by Continental.

The issue presented is whether Darch is an "insured" under the coverage provided for the 34 commercial vehicles that he did not occupy at the time of the collision.

---

[1] Included with the commercial policy was separate family automobile insurance for three vehicles owned and used by the individuals who owned Consolidated. Darch has no claim to coverage under this insurance because it extends coverage only to occupants of vehicles in private, noncommercial use.

■ Like all contracts, we must construe insurance contracts in a manner that gives effect to the intent of the parties. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976). This intent is found in the language of the policy "viewed against the setting in which it is formed." *Continental Volvo, Inc. v. Ross,* 17 Wn. App. 316, 317–18, 562 P.2d 1002 (1977). We, therefore, begin our analysis with the definition of "insured" found in the policy.

The policy defines "insured" for purposes of uninsured motorist coverage as:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

The policy defines "insured highway vehicle" as:

"[I]nsured highway vehicle" means a highway vehicle:
(a) described in the schedule as an insured highway vehicle to which the bodily injury liability coverage of the policy applies.

■ For purposes of uninsured motorist coverage, we must also examine the definition of "insured" for liability coverage.

[O]nce it is determined that a person is insured under the liability section of the policy, that person is also entitled to be considered as an insured under the uninsured motorist endorsement of the policy.

*Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 329, 585 P.2d 157 (1978); *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 563 P.2d 815 (1977). The liability section of the policy defines "insured" as:

(a) the named insured;

(b) any partner or executive officer thereof, but with

respect to a non–owned automobile only while such automobile is being used in the business of the named insured;

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the named insured or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.

An "owned automobile" is defined as "an automobile owned by the named insured."

The policy does not list Darch as one of the "named insured," and the policy does not have a "designated insured." Darch is not related to the "named insured," and he is not a partner or executive officer of the "named insured." He qualifies as an "insured" only under subparagraph (b) of the uninsured motorist coverage and subparagraph (c) of the liability coverage. He is an "insured" under either definition only when he occupies certain vehicles. These definitions, therefore, do not extend coverage to Darch as a nonoccupant of 34 other commercial vehicles scheduled in the policy. They extend a single coverage to him as the occupant of one of the 35 commercial vehicles.

Darch contends that our uninsured motorist statutes require broader coverage. He asserts that once he is recognized as an "insured," he must be given the same coverage as the policy's "named insured." He relies on cases where the "named insureds" or other broadly defined "insureds" are protected by coverages on vehicles not occupied at the time of an accident caused by an uninsured motorist.

*American States Ins. Co. v. Milton,* 89 Wn.2d 501, 573 P.2d 367 (1978); *Federated Am. Ins. Co. v. Raynes, supra; Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975). *Milton, Raynes* and *Cammel* invalidated limiting or exclusionary clauses that would have reduced such multiple coverage to a single coverage.[2]

Darch correctly describes the coverage and public policy applicable to "named insureds" and others with multiple coverage under a policy's definition of "insured." Darch, however, is not a "named insured" and does not satisfy any definition of "insured" that would give him more than one coverage. There is no requirement that his single coverage be extended to equal the multiple coverage of the "named insured." Our uninsured motorist statutes allow (and require) a policy to define two distinct classes of "insured:" (1) The "named insured" and (2) those protected only when using certain vehicles. RCW 48.22.030 (amended 1980); RCW 46.29.490(2)(b) (amended 1980); *see General Ins. Co. of America v. Icelandic Builders, Inc.,* 24 Wn. App. 656, 604 P.2d 966 (1979).[3] The policy lawfully defines Darch as an "insured" of the second class covered only when using certain vehicles.

Darch, nonetheless, contends that he is entitled to 35 coverages because 35 uninsured motorist premiums were paid. He argues that 1 premium is sufficient to cover him in any owned automobile and that other premiums purchase nothing if only 1 coverage is allowed. His argument has no merit in this limited coverage, commercial fleet context for two reasons. First, the parties intended the policy to cover a fleet of vehicles with appropriate premium adjustments when the size of the fleet changed. The terms of the policy

---

[2]Recently amended RCW 48.22.030 now permits automobile insurance to limit the "named insured" and other broadly defined "insureds" to a single uninsured motorist coverage.

[3]The 1980 amendment to RCW 46.29.490 left intact the required two classes of "insured." Laws of 1980, ch. 117, § 6, p. 364–66.

do not allow the premium paid for 1 insured highway vehicle to provide uninsured motorist insurance for the other 34 insured highway vehicles.[4] Second, Darch's argument has merit only in cases like *Milton, Raynes* and *Cammel* where additional premiums were unnecessary to protect the broadly defined "insured" in other vehicles. Here, however, additional premiums purchased additional coverage. They were necessary to provide narrowly defined "insureds" like Darch with single coverage in other vehicles.

■ Adopting Darch's argument would provide multiple uninsured motorist coverage for every permissive user of every vehicle in a commercial fleet. If each vehicle in the fleet, during the term of the policy, were in an accident with an uninsured motorist, there could be liability of 35 x 35 x $15,000 ($30,000 if more than one person involved) for uninsured motorist coverage.[5] The average person purchasing this policy would not expect such coverage. *Ames v. Baker*, 68 Wn.2d 713, 415 P.2d 74 (1966). We cannot construe the policy to reach a result that would be unreasonable in light of the commercial setting in which it was written. *Morgan v. Prudential Ins. Co. of America*, 86 Wn.2d 432, 545 P.2d 1193 (1976); *Tieton v. General Ins. Co. of America*, 61 Wn.2d 716, 380 P.2d 127 (1963).[6]

---

[4]The primary liability portion of the policy insured, *inter alia*, against damages arising out of the ownership of "any automobile." A premium charge for a new vehicle is automatically assessed by the following provision in the uninsured motorist portion of the policy.

> If during the policy period the number of insured highway vehicles owned by the named insured or spouse or the number of dealer's license plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

[5]$18,375,000 or $36,750,000. For Darch alone, the recovery could be $15,000 x 35 = $525,000.

[6]*Accord, Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555 (Ky. 1979); *Cunningham v. Insurance Co. of N. America*, 213 Va. 72, 189 S.E.2d 832 (1972);

732

Affirmed.

CALLOW, C.J., and DURHAM, J., concur.

Reconsideration denied January 13, 1981.

Review denied by Supreme Court March 27, 1981.

*Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo. App. 1980); *Travelers Ins. Co. v. Pac,* 337 So. 2d 397 (Fla. App. 1976).