[No. 5644-5-II.  Division Two.  March 3, 1983.]

RICHARD D. THOMPSON, ET AL, *Respondents,* v.
GRANGE INSURANCE ASSOCIATION, ET AL,
*Appellants.*

152

*Matt Murray* (of *Murray, Dunham & Murray*), for appellant Grange Insurance Association.

*William R. Hickman* (of *Reed, McClure, Moceri & Thonn, P.S.*), for appellant Great American Insurance Company.

*Frank A. Peters,* for respondents.

PETRICH, C.J.—Great American Insurance Company (Great American) appeals a declaratory judgment entitling Richard D. Thompson to claim up to $765,000 in uninsured motorist benefits. Grange Insurance Association (Grange) appeals from the same judgment which declares that it has secondary liability by virtue of a policy issued to and naming the Thompsons as the insureds to the extent of $30,000. Thompson and his wife cross–appeal, contending that he should be permitted to stack more vehicles and that she should be permitted to recover under both policies for her separate loss of consortium claim.

The primary issues presented in this appeal are:[1]

1. Whether Thompson, as an operator of his employer's motor vehicle, is entitled to stack uninsured motorist coverage provided by his employer's insurance policy where the policy extends coverage to Thompson as an occupant of the vehicle and not as a named insured.

2. Whether Mrs. Thompson's claim for loss of consortium is a bodily injury which would trigger the upper limits of

---

[1]Issue 1 concerns the Great American policies. Issue 3 concerns the Grange policy. Issue 2 is common to both policies.

the uninsured motorist coverage provisions of the policies.

3. Whether the delay in claiming uninsured motorist coverage benefits precludes recovery.

We hold that stacking of the uninsured motorist coverage (UMC) of the employer's policy is not permitted; that though the wife may be entitled to benefits for loss of consortium those benefits are limited to the single limits of the policy and she is not entitled to a separate claim; and that the delay does not preclude recovery.

On June 26, 1974, Thompson was driving a Lewis County truck in the course of his employment when he was severely injured in an accident caused by an uninsured motorist. At the time, Thompson had a Grange insurance policy providing UMC of $15,000 per person and $30,000 per accident; he had been paying two uninsured motorist premiums for two cars. Lewis County's 156 vehicles were insured under a Great American policy, the named insureds of which were Lewis County and its elective or appointive officials. The general liability section of the Great American policy provided that:

(a) "Insured" means the named insured and:

. . .
 (8) any other person while using an owned automobile . . . with the permission of the named insured . . .

The uninsured motorist section provided that:

Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured and any designated insured . . .;
(b) any other person while occupying an insured highway vehicle; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Insurance applies sustained by an insured under (a) or (b) above.

. . .
"Insured highway vehicle" means a highway vehicle: (a) described in the schedule as an insured highway vehicle to which the bodily injury liability coverage of the policy applies; . . .

All Lewis County vehicles had bodily injury liability cover-

age.

Lewis County's Great American policy provided UMC for 50 passenger vehicles, each of which was covered up to $15,000 per person and $30,000 per accident. The policy required the county to pay a $5 premium for each of these vehicles. No premium was charged or paid for any UMC on the remaining 106 vehicles, one of which was the truck driven by Thompson.

On July 2, 1973, Lewis County had taken out a Great American "catastrophe" or "umbrella" policy to pay for the ultimate net loss in excess of the total applicable limits of the underlying policies. It did not mention UMC.

After failing in a suit against Lewis County,[2] the Thompsons brought a declaratory judgment action against Grange and Great American on July 11, 1979. The court ruled: (1) that Mrs. Thompson was not entitled to bring her separate claim for loss of consortium under the UMC of either defendant; (2) that Grange was not prejudiced by the plaintiff's delay in bringing this action; (3) that Lewis County had not rejected UMC as to Great American's fleet and catastrophe policies; (4) that because the county paid 50 uninsured motorist premiums charged in the fleet policy, Thompson was entitled to stacking ($15,000 x 50 = $750,000); (5) that because no UMC was offered in the catastrophe policy, Thompson was entitled to claim the statutory minimum for UMC under that policy ($15,000); and (6) that Grange had secondary liability of $30,000.

A preliminary question to resolve is whether UMC extends at all to Lewis County's 106 nonpassenger vehicles, one of which was involved in Thompson's accident. Only 50 passenger and sheriff vehicles were specifically covered in the UMC endorsement. Coverage, then, depends on whether the county rejected UMC as to the 106 nonpassenger vehicles. If UMC was not rejected, there is coverage. RCW 48.22.030.

The question of whether an insured exercised his

---

[2] *Thompson v. Lewis Cy.*, 92 Wn.2d 204, 595 P.2d 541 (1979).

right to reject UMC is a question of fact to be determined from the circumstances of the particular case. *Grange Ins. Ass'n v. Great Am. Ins. Co.*, 89 Wn.2d 710, 575 P.2d 235 (1978). RCW 48.22.030, wherein the named insured is given the right to reject UMC, does not require a written rejection. It is sufficient if the insured knew of the existence of UMC, understood his rights to accept or reject it, and made an informed choice to reject it. *Grange Ins. Ass'n v. Great Am. Ins. Co., supra.* Substantial evidence supports the trial court's findings that Lewis County never rejected UMC on the 106 nonpassenger vehicles included in the Great American policy.

The situation here is not like that in *Grange Ins. Ass'n v. Great Am. Ins. Co., supra,* in which the Tacoma city officials and their consultants who prepared the specifications for insurance coverage reflected sophisticated knowledge of insurance matters including UMC provisions. Failure to specify UMC clearly established a rejection of such coverage. Here, the Lewis County officials displayed no special knowledge of insurance matters, and the schedules and memoranda concerning UMC were prepared by the insurance broker or the company and not by the county. The evidence before us does not suggest that Lewis County acted as a sophisticated purchaser of insurance or that it was fully aware of its right to accept or reject UMC. The court below was correct in finding the absence of a valid rejection, and, thus, the required minimum UMC will be read into the Great American policy. *Grange Ins. Ass'n v. Great Am. Ins. Co., supra; Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972).

Another preliminary question is whether RCW 48.22.030, which requires UMC in any new or renewal policy, imposes UMC on Great American's catastrophe policy. Because this policy did not specifically provide for UMC, the trial court read into it the minimum amount of $15,000 as being available to Thompson. This was error.

Catastrophe–type policies pick up where primary coverages end. 8A J. Appleman, *Insurance* § 4909.85 (1981).

They provide coverage excess to that provided by the primary policy or policies. Here, the Great American catastrophe policy agreed to pay only the ultimate net loss in excess of the total applicable limits of the underlying policies. Although it was, in a sense, a new policy, it was really a continuation of the primary policies, in that it provided for coverage in addition to that already existing. And, although the fleet policy was first in time, the fleet policy supplemented the catastrophe policy in the sense that it fulfilled or completed the statutory requirement. That being the case, the catastrophe policy did not need to supply any UMC, and the court was in error to read in the minimum UMC.[3]

We now turn to the issue of stacking. The Thompsons first note that RCW 48.22.030 mandates UMC, absent rejection, "for the protection of persons insured" under the policy's liability coverage. They also point to the following language in *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 444, 563 P.2d 815 (1977):

> [*Touchette v. Northwestern Mut. Ins. Co., supra,* and *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976)] stand for the proposition that the parties may agree to a narrow definition of insured so long as that definition is applied consistently throughout the policy, but once it is determined that a person is an insured under the policy, that person is entitled to uninsured motorist coverage.

The Thompsons' argument is that RCW 48.22.030 only speaks of one class of insured and that because Mr. Thompson was an insured under the Great American policy for liability purposes, he should also have all the rights of an insured for UMC purposes, including the right to stacking. They therefore defend the court's judgment allowing Mr. Thompson to stack the uninsured motorist coverages of the 50 vehicles on which uninsured motorist premiums had

---

[3]We therefore need not discuss Thompson's contention that his recovery under the fleet policy should be doubled because of the catastrophe policy.

been paid.[4] We disagree.

Subsequent to trial below, Division One of this court decided a very similar case, *Continental Cas. Co. v. Darch,* 27 Wn. App. 726, 620 P.2d 1005 (1980), *review denied,* 95 Wn.2d 1013 (1981), which we choose to follow.

Darch, who was driving one of his employer's 35 commercial vehicles, was injured by an uninsured motorist. Darch was an "insured" under both the company policy's liability section and UMC section because he had been occupying an insured highway vehicle. He contended that since he was recognized as an "insured," he must be given the same coverage as the policy's "named insureds." In other words, on the basis of *American States Ins. Co. v. Milton,* 89 Wn.2d 501, 573 P.2d 367 (1978); *Federated Am. Ins. Co. v. Raynes, supra;* and *Cammel v. State Farm Mut. Auto Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975), he also wanted to stack the uninsured motorist coverages for the remaining 34 vehicles. Division One disagreed.

The court stated that:

> Darch correctly describes the coverage and public policy applicable to "named insureds" and others with multiple coverage under a policy's definition of "insured." Darch, however, is not a "named insured" and does not satisfy any definition of "insured" that would give him more than one coverage. There is no requirement that his single coverage be extended to equal the multiple coverage of the "named insured." Our uninsured motorist statutes allow (and require) a policy to define two distinct classes of "insured:" (1) The "named insured" and (2) those protected only when using certain vehicles. RCW 48.22.030 (amended 1980); RCW 46.29.490(2)(b) (amended 1980); *see General Ins. Co. of America v. Icelandic Builders, Inc.,* 24 Wn. App. 656, 604 P.2d 966 (1979). The policy lawfully defines Darch as an "insured" of the second class covered only when using certain vehicles.

(Footnote omitted.) 27 Wn. App. at 730. We would add

---

[4]Furthermore, they claim he should be allowed to stack the uninsured motorist coverages of the remaining 106 vehicles.

that the creation of two distinct classes of "insured" for UMC purposes does not conflict with RCW 48.22.030 or case law. The statute's intent was to provide minimum coverage to insureds who are victims of uninsured motorists. Absent rejection, members of *both* classes receive such protection under the *Darch* analysis. Further, and in contrast to a case such as *Raynes,* there is really no whittling away of this minimum coverage. Rather, what we have is a situation in which the public policy behind stacking just does not apply in the first instance.

*Milton, Raynes,* and *Cammel,* cases that allowed stacking, all dealt with insureds who were covered under uninsured motorist provisions regardless of whether they were in an insured vehicle. If stacking were not allowed in such cases, any additional UMC premiums paid by an insured of the first class would offer him no additional protection. By contrast, because Thompson was an insured only because he occupied an insured vehicle, the additional UMC premium paid to cover that vehicle gave him the coverage he otherwise would not have had. Because a quid pro quo already exists, public policy does not require stacking.

Furthermore, as stated in *Darch,* to adopt stacking for an insured of the second class would be to reach an unreasonable and completely unexpected result in light of the commercial setting in which the policy was agreed upon. We therefore hold that, because Thompson was an insured only when occupying an insured vehicle, he cannot claim any right to stacking, but is only entitled to the minimum UMC which we read into the policy. This holding is in line with the majority of jurisdictions around the country.[5]

---

[5]*Moomaw v. State Farm Mut. Auto Ins. Co.,* 379 F. Supp. 697 (S.D.W. Va. 1974); *Holloway v. Nationwide Mut. Ins. Co.,* 376 So. 2d 690 (Ala. 1979); *Lambert v. Liberty Mut. Ins. Co.,* 331 So. 2d 260 (Ala. 1976); *Nationwide Ins. Co. v. Gode,* 187 Conn. 386, 446 A.2d 1059 (1982) (dictum); *Travelers Ins. Co. v. PAC,* 337 So. 2d 397 (Fla. Dist. Ct. App. 1976); *Sturdy v. Allied Mut. Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969); *Ohio Cas. Ins. Co. v. Stanfield,* 581 S.W.2d 555 (Ky. 1979); *Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo. Ct. App. 1980); *Taft v. Cerwonka,* ___ R.I. ___, 433 A.2d 215 (1981) (dictum); *Cunningham v. Insurance Co. of N. Am.,* 213 Va. 72, 189 S.E.2d 832 (1972); *Continental Cas. Co. v. Darch,*

The plaintiffs cross–appeal the court's determination that Mrs. Thompson had no right to bring a separate claim for loss of consortium under either policy's uninsured motorist provisions. They contend that she has a right to recover up to $30,000 under the Grange policy and up to $4,680,000 under the Great American policy.[6]

While there is no question that Mrs. Thompson would have a claim for loss of consortium against the negligent driver, *Lundgren v. Whitney's, Inc.*, 94 Wn.2d 91, 614 P.2d 1272 (1980), the question before us is whether she may recover such claim under the policies' UMC provisions.

We begin by stating that Mrs. Thompson was an insured under each policy. The Grange policy specifically designated her as a named insured. In the Great American policy, as stated previously, an insured was "(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Insurance applies sustained by an insured under (a) or (b) [*supra*] . . ." The phrase "damages he is entitled to recover" refers to a right arising under the applicable law of torts. *Pearthree v. Hartford Accident & Indem. Co.*, 373 So. 2d 267 (Miss. 1979). Here, because Mrs. Thompson was legally entitled to recover damages directly from the tortfeasor for loss of consortium with her insured husband, she is an "insured." *See also Tara v. California State Auto. Ass'n*, 93 Cal. App. 3d 227, 155 Cal. Rptr. 497 (1979).

We must now examine the policies' language as to their UMC limits of liability. Grange began its UMC section by agreeing

> [t]o pay all damages which the insured shall be legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured . . .

---

27 Wn. App. 726, 620 P.2d 1005 (1980). *See also* 2 I. Schermer, *Automobile Liability Insurance* § 31.03[1] (2d ed. 1981).

[6]156 (vehicles) x $15,000 (minimum UMC) x 2 (because of the catastrophe policy) = $4,680,000.

Grange set its limits of bodily injury liability as that required by the laws of the state in which the accident occurs. In the event of no applicable law,

> the limit of the company's liability under this supplement shall be $5,000 on account of bodily injury sustained by one insured as a result of any one accident and subject to the above provision respecting one insured shall be $10,000 on account of bodily injury sustained by two or more insureds as the result of any one accident . . .

In its UMC provision, Great American stated that

> [t]he limit of liability stated in the declarations as applicable to "each person" [$15,000] is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the declarations as applicable to "each accident" [$30,000] is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

Although each policy has somewhat different language, the following discussion applies equally to both. We first note that an insurance contract shall be given a fair, reasonable, and sensible construction—a construction such as would be given by an average person purchasing insurance. *Frontier Lanes v. Canadian Indem. Co.,* 26 Wn. App. 342, 613 P.2d 166 (1980). Here, the phrases "bodily injury sustained by one insured" and "bodily injury sustained by one person" obviously refer to a direct physical injury to one person. Any other reading would be strained. *See United Servs. Auto. Ass'n v. Warner,* 64 Cal. App. 3d 957, 135 Cal. Rptr. 34 (1976); *Williams v. State Farm Mut. Auto. Ins. Co.,* 99 N.J. Super. 377, 240 A.2d 38 (1968). We next observe the widely held rule that damages for loss of consortium are consequential, rather than direct, damages. They necessarily are dependent upon a bodily injury to the spouse who can no longer perform the spousal functions; it does not arise out of a bodily injury to the spouse suffering

the loss. *United Servs. Auto. Ass'n v. Warner, supra. See State Farm Mut. Auto. Ins. Co. v. Ball,* 127 Cal. App. 3d 568, 179 Cal. Rptr. 644 (1981); *Travelers Indem. Co. v. Cornelsen,* 272 Md. 48, 321 A.2d 149 (1974); *Williams v. State Farm Mut. Auto. Ins. Co., supra. See also* 15 G. Couch, *Insurance* § 56.44 (2d ed. 1966 & Supp. 1982); 2 I. Schermer, *Automobile Liability Insurance* § 25.02 (2d ed. 1981); 7 Am. Jur. 2d *Automobile Insurance* § 195 (1963 & Supp. 1978); Annot., 13 A.L.R.3d 1228 (1967). Consequently, because Mrs. Thompson did not suffer a bodily injury in the accident, the upper limits of UMC are not triggered, and she has no right to recover more than the single accident limit under each policy.

For the same reasons, there is no conflict with the applicable statutes. The minimum UMC required in Washington, as set forth in RCW 48.22.030's incorporation of former RCW 46.29.490(2)(b) is

> [f]ifteen thousand dollars because of *bodily* injury to or death of one person in any one accident and, subject to said limit for one person, thirty thousand dollars because of bodily injury to or death of two or more persons in any one accident, . . .

(Italics ours.) Only Mr. Thompson suffered bodily injury in the accident. His wife's loss of consortium was incurred thereafter, as a result of the accident, but it is not a bodily injury for which the statute demands the upper limit of liability. *Cf. West Am. Ins. Co. v. Buchanan,* 11 Wn. App. 823, 525 P.2d 831 (1974) (claim for grief, mental anguish, and suffering held to be for consequential damages, rather than for bodily injuries which would trigger the upper limit for UMC).

All this is not to say, however, that someone in Mrs. Thompson's position is precluded from bringing her claim for consequential damages within the lower limits of the coverage provided. Both policies agree to pay for *all damages* resulting from bodily injury to one person. This would appear to include consequential as well as direct damages. And in their liability sections, both policies speak of all

damages as including damages for care and loss of services. Even though loss of consortium is not specifically mentioned, it is so closely related an item as to be necessarily included. *See, e.g., Napier v. Banks,* 9 Ohio App. 2d 265, 224 N.E.2d 158 (1967); *Siegel v. American Interstate Ins. Corp.,* 72 Wis. 2d 522, 241 N.W.2d 178 (1976).

Thus, if Mr. Thompson recovers less than the $30,000 limit in the Grange policy, his wife can claim what is left; likewise for the $15,000 limit we read into the Great American policy. These are the total amounts which may be recovered because of bodily injury to one person. It matters not how many legally share in the recovery, but the total recovered from the company cannot exceed the "per person" limits. *Napier v. Banks, supra.*

We finally turn to Grange's claim that the court erred in finding that Grange was not prejudiced by the plaintiffs' failure to give notice of their claim for almost 5 years.[7] The policy required notice to be given of any uninsured motorist claim "as soon as practicable." This means as soon as can reasonably be expected under the circumstances. *State Farm Mut. Auto. Ins. Co. v. Erickson,* 5 Wn. App. 688, 491 P.2d 668 (1971).

Prejudice, however, will be presumed only in extreme cases and is an issue upon which the one claiming prejudice has the affirmative burden of proof. *Pulse v. Northwest Farm Bur. Ins. Co.,* 18 Wn. App. 59, 566 P.2d 577 (1977). Further, the insurer must show actual prejudice. *Oregon Auto. Ins. Co. v. Salzberg,* 85 Wn.2d 372, 535 P.2d 816 (1975). Although plaintiffs' delay was extraordinarily long, we are reluctant to presume prejudice for the primary reason that Grange never comes close to proving actual prejudice. Despite the statute of limitation now barring the pursuit of any claim against the tortfeasor, Grange never demonstrated that such person had any assets it might have recovered. Moreover, it never introduced any evidence

---

[7]Grange, however, admitted to learning of the accident approximately 3½ years after its occurrence.

suggesting that Thompson was in any way responsible for the accident. Under these circumstances we cannot say the court's finding was in error.

In sum, we reverse in part and affirm in part. As previously decided, Thompson may recover up to $30,000 under the Grange policy. But he may only recover the minimum of $15,000 UMC for the vehicle he was driving under the Great American policy. Although his damages will, in all probability, exhaust such coverage, we must also speak to the possibility such does not occur; in that event, his wife may bring her claim for loss of consortium against the remainder.

REED and WORSWICK, JJ., concur.

Reconsideration denied March 14, 1983.