[No. 55798–5.   En Banc.   December 7, 1989.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
IN
DENICE K. MACKENZIE, *Individually and as Personal Representative*, ET AL, *Plaintiffs*, v. EMPIRE INSURANCE COMPANIES, ET AL, *Defendants*.

*Schroeter, Goldmark & Bender* and *Virginia M. Robinson*, for plaintiff Denice MacKenzie.

*Robert B. Kornfeld*, for plaintiff Donald MacKenzie.

*Betts, Patterson & Mines, P.S.,* by *Richard S. Lowell,* for defendants.

ANDERSEN, J.—

FACTS OF CASE

The issue in this case has been certified to us by the United States District Court for the Western District of Washington. It concerns whether a special multi–peril insurance policy, covering various business perils, and including an endorsement for comprehensive automobile liability insurance (which is asserted to provide coverage only in *excess* of primary automobile insurance policies covering the automobile involved in this case) is exempt from the requirements of Washington's underinsured motorist statute (RCW 48.22.030).

On January 28, 1983, Denice MacKenzie's husband and son, David MacKenzie and Mack MacKenzie, were killed in an automobile accident. Donald MacKenzie, the brother of David MacKenzie, was also injured in the accident.

The accident involved two automobiles. The deceased and injured were occupants of the same automobile. The other automobile involved in the accident was driven by Harry C. Lippold. In an action brought against Mr. Lippold, Denice MacKenzie and Donald MacKenzie (hereinafter collectively referred to as the MacKenzies) were granted summary judgment on the issue of liability. The Lippold automobile, however, proved to be uninsured.

The MacKenzies then sought recovery under personal automobile insurance policies written by the Western Fire Insurance Company. A settlement was reached, apparently exhausting the applicable limits of the Western policies.

The MacKenzies then sought further recovery under the insurance policy at issue herein, a policy designated "Special Multi–Peril Policy" written by the Empire Insurance Companies and/or by Empire Fire & Marine Insurance Company. For convenience, we will refer to the companies together as "Empire".

The named insureds under the Empire policy are the following:

Donald and Karen MacKenzie and David MacKenzie dba Don Diegos Restaurant; D & D MacKenzie Enterprises, Inc. AKA Blue Max Drive–in Restaurant; E. A. and Mary Eiffert.

The Empire policy provides coverage for a broad variety of business perils and also includes an endorsement entitled "Comprehensive Automobile Liability Insurance". The Empire policy does not by its terms provide uninsured or underinsured motorist coverage (hereinafter collectively referred to as UIM coverage). The policy also does not specify any particular vehicles as being covered by the Empire policy.

The MacKenzies filed a declaratory judgment action against Empire in the Superior Court of the State of Washington seeking a declaration of UIM coverage under the Empire policy, and alleging that such coverage was required by statute (RCW 48.22.030) to be provided in the Empire policy. Empire, in turn, had the state court declaratory judgment action removed to the United States District Court for the Western District of Washington. Upon motion jointly brought by Empire and the MacKenzies, however, the District Court to which the case was removed now certifies the following question to this court.[1]

## QUESTION CERTIFIED

Is a comprehensive automobile liability insurance policy contained in a special multi–peril policy exempt from the provisions of Washington's underinsured motorist statute (RCW 48.22.030)?

## ANSWER

Yes, insofar as *excess* automobile liability coverage contained in such a policy is concerned; however, by whatever name such policy may be designated, in order for the automobile liability coverage contained in the policy to be exempt from Washington's UIM statute, the policy must by

---

[1] RCW 2.60.020.

its terms only provide coverage in *excess* of the primary automobile coverage applicable to the vehicle in question.

Our UIM statute provides in pertinent part:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . . because of bodily injury, death, or property damage, resulting therefrom, . . .

RCW 48.22.030(2) (part).

The question certified to us concerns whether this statute applies to the Empire policy at issue and requires Empire to provide UIM coverage under that policy.

It is Empire's contention that the UIM statute does not so apply. Empire emphasizes that the policy in issue is a business policy, not a personal automobile liability policy, and that it does not list any specific vehicles as being covered thereby. The crux of the matter is whether our UIM statute applies to policies such as this one which is asserted to provide only excess coverage on the automobile in question. We believe that the better–reasoned view is that it does *not,* and we so hold.

■ This court has previously relied on John Appleman's extensive insurance law text in discussing excess and primary insurance coverage issues.[2] As to "umbrella" policies, a type of excess coverage,[3] Appleman's treatise contains the following pertinent discussion:

> Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. . . . It may assume as a primary carrier certain coverages not

---

[2]*See Safeco Ins. Co. of Am., Inc. v. Pacific Indem. Co.,* 66 Wn.2d 38, 46, 401 P.2d 205 (1965).

[3]*See* RCW 48.22.030(2).

included elsewhere, such as invasion of privacy, false arrest etc., but *there is no intention to supplant the basic carriers on the homeowners or automobile coverages. Therefore, these should not even enter into our current consideration [of UIM coverage].*

(Italics ours.) 8C J. Appleman, *Insurance* § 5071.65, at 107 (1981). The treatise concedes that some courts have held to the contrary,[4] but concludes that those decisions reflect a "misunderstanding of the courts as to the nature of such coverages, . . ." 8C J. Appleman, at § 5071.65, at 107.

Numerous cases are in accord with the statement of the law expressed in the Appleman treatise.[5] The decision of our own Court of Appeals in the case of *Thompson v. Grange Ins. Ass'n,* 34 Wn. App. 151, 660 P.2d 307, *review denied,* 99 Wn.2d 1011 (1983) is among these cases and is in point. In *Thompson,* the Court of Appeals held that the UIM statute did not apply to a "catastrophe", or

---

[4]8C J. Appleman, *Insurance* § 5071.65, at 107 (1981). *See also Chicago Ins. Co. v. Dominguez,* 420 So. 2d 882 (Fla. Dist. Ct. App. 1982), *review denied sub nom. Associated Insurers, Inc. v. Chicago Ins. Co.,* 430 So. 2d 450 (Fla. 1983); *St. Paul Fire & Marine Ins. Co. v. Goza,* 137 Ga. App. 581, 224 S.E.2d 429 (1976); *Southern Am. Ins. Co. v. Dobson,* 441 So. 2d 1185 (La. 1983); *Cincinnati Ins. Co. v. Siemens,* 16 Ohio App. 3d 129, 474 N.E.2d 655 (1984) (all holding that UIM statute applies to umbrella policy).

[5]*See O'Hanlon v. Hartford Accident & Indem. Co.,* 639 F.2d 1019 (3d Cir. 1981) (applying Delaware law); *Trinity Universal Ins. Co. v. Metzger,* 360 So. 2d 960, 962 (Ala. 1978); *Continental Ins. Co. v. Howe,* 488 So. 2d 917 (Fla. Dist. Ct. App. 1986) (applying Rhode Island law), *review denied,* 494 So. 2d 1151 (1986); *Hartbarger v. Country Mut. Ins. Co.,* 107 Ill. App. 3d 391, 437 N.E.2d 691 (1982); *Matarasso v. Continental Cas. Co.,* 82 A.D.2d 861, 440 N.Y.S.2d 40 (1981) (mem.), *aff'd,* 56 N.Y.2d 264, 436 N.E.2d 1305, 451 N.Y.S.2d 703 (1982); *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406 (Okla. 1986) (all holding that UIM statute does not apply to umbrella policy). An attempt has been made to distinguish these cases based on the fact that the UIM statutes involved therein only required a minimum amount of UIM coverage, as opposed to requiring UIM coverage equivalent to the amount of liability coverage. *See Southern American,* at 1191. We do not find this distinction meaningful. As we perceive it, the primary reason that the UIM statutes do not apply to umbrella policies is that such policies are an *inherently different type of policy,* not because a UIM statute may only require a minimum amount of UIM coverage. *See Trinity,* at 962; *Hartbarger,* 107 Ill. App. 3d at 395; *Moser,* at 410 n.16. As the quotations used in the body of this opinion make clear, this is also Appleman's view.

"umbrella", policy, and we denied review.[6] In so holding, the Court of Appeals reasoned:

> *Catastrophe–type policies pick up where primary coverages end. They provide coverage excess to that provided by the primary policy* . . . Although [the insurance policy at issue] was, in a sense, a new policy, it was really a *continuation* of the primary policies, in that it provided for coverage *in addition* to that already existing.

(Citation omitted. Italics ours.) *Thompson,* at 156–57.

In 1985, subsequent to the 1983 tragedy which resulted in the litigation before us, the Legislature amended the UIM statute to, in effect, write the *Thompson* holding into the UIM statute. This amendment added the following to the statute:

> The coverage required to be offered under this chapter is not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.

Laws of 1985, ch. 328, § 1, p. 1125.[7] It is not claimed that the 1985 amendment applies to this action involving a 1983 accident and a 1982 insurance policy. The Court of Appeals *Thompson* decision was not a holding of the state's highest court; thus, the legislative action conclusively settled the issue so far as subsequent litigants were concerned, if not as to the MacKenzies.

While it is indeed true, as the MacKenzies argue, that there is a general public policy underlying the UIM statute of increasing and broadening the public's protection against automobile accidents,[8] the existence of this general policy is not sufficient by itself to justify our disregarding the carefully reasoned and well–supported holding in *Thompson.*

---

[6]*Thompson v. Grange Ins. Ass'n,* 34 Wn. App. 151, 157, 660 P.2d 307, *review denied,* 99 Wn.2d 1011 (1983).

[7]*See also* RCW 48.22.030(2) (part).

[8]*See Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 207–08, 643 P.2d 441 (1982); *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 332, 494 P.2d 479 (1972).

Thus, in answering the question certified to us by the federal court, we conclude that a comprehensive automobile liability insurance endorsement contained in a special multiperil policy is exempt from Washington's UIM statute insofar as such insurance policy merely provides coverage in excess of the primary automobile coverage.

One further matter requires mention. Based on the state of the limited record submitted to us, it has not yet been determined whether the policy here at issue provides excess or primary automobile coverage. Such determination necessarily depends on the precise terms of the Empire policy. Since the parties dispute the actual language of the Empire insurance policy,[9] it remains for the federal courts to first resolve that factual dispute.

CALLOW, C.J., DOLLIVER, DURHAM, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.

BRACHTENBACH, J. (dissenting)—The majority engages in a learned dissertation of whether "a comprehensive automobile liability insurance policy contained in special multi-peril policy [is] exempt from the provisions of Washington's underinsured motorist statute (RCW 48.22.030)?" Majority, at 756. The majority concludes that the policy in question is asserted to provide only *excess* coverage and the statute does not apply. Majority, at 756–57.

The majority in its last paragraph mentions that it has not yet been determined whether the policy in question provides primary or excess coverage.

---

[9]On the one hand, Empire maintains that the correct terms of the comprehensive automobile liability endorsement contained in the special multi–peril policy at issue are those filed with the Office of the Insurance Commissioner. The terms contained therein indicate that the policy provides excess coverage. The MacKenzies, on the other hand, point out that a copy of the Empire policy also submitted to this court as a true and exact copy of the policy actually issued does not contain the page on which it appears that the policy is excess only. This is not an issue that the federal court has certified to us, or one that we would feel comfortable resolving given the nature of the record on this aspect of the case.

I dissent on the basis that this court should not answer questions which may or may not exist. This record prevents an intelligent answer to the certified question. On this record the question is really "what if"?

The majority premises its entire discussion upon the existence of a policy known as an excess, umbrella or catastrophe–type policy.

Yet the defendant insurance company certified in a stipulation in the record that the attached policy was a true and exact copy of the original issued to the insureds, MacKenzies. In paragraph 7 of the conditions applicable to section II (the liability section) the certified "true and exact copy" of defendant's insurance policy, it states: "The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance." Stipulated Supplemental Record on Certification, Special Multi–Peril Policy, at 4.

The "true and exact copy" furnished by defendants contains a multitude of attachments, many undated and not designated as applying to a particular policy. Throughout defendants' brief there is reference to what the insureds never *intended* to protect by this policy and what they did *intend* to cover, what was the *purpose* of the policy, what the policy did not *intend* to cover, the premise on which Empire Fire & Marine Insurance Company issued the policy and risks for which no premiums have been charged.

A review of the 57 pages making up the "true and exact copy" leaves one perplexed at best. Those pages contain the quoted–above declaration that it is primary coverage, Form A–26 is entitled in caps "Comprehensive Automobile Liability Insurance with limits of $500,000 for bodily injury liability".

If in fact, this policy only provides "excess" coverage, there is a substantial question as to the effect of the 1985 amendment to the underinsured motorist statute which specifically excluded underinsured motorist coverage from

umbrella or excess policies. RCW 48.22.030(2). Usually such material change would lead to a presumption of a change in existing legislative intent. *Strunk v. State Farm Mut. Auto. Ins. Co.,* 90 Wn.2d 210, 213, 580 P.2d 622 (1978). The logical application here of that rule would lead to a conclusion contrary to the majority.

Defendants acknowledge that there is a factual dispute as to the contents of the policy in issue. They refer to the "correct" endorsement, but defendants state that for purposes of certification only the "incorrect" endorsement has been submitted to this court. Brief of Respondent, at 4.

In short, this is a sorry record on which to issue an opinion. The court does not even know the contents of the insurance policy which governs the rights of the parties. The majority renders an opinion about what might be the law if the policy as finally established factually happens to fall within a policy version urged by defendants as what they intended it to be.

I would return this case to the federal district court so that the parties and the court can determine what insurance policy they are arguing about. This case has not reached any defined issue yet. Until then I would forgo writing an opinion about a policy, the contents of which are unknown to this court, and which might or might not exist in fact.

UTTER and DORE, JJ., concur with BRACHTENBACH, J.