Ray PENTZ, Appellant,

v.

Carey Mike DAVIS, Oklahoma Farm Bureau Mutual Insurance Company, Allstate Insurance Company and Church Mutual Insurance Company, Appellees.

No. 74693.

Supreme Court of Oklahoma.

July 16, 1996.

Rehearing Denied Dec. 4, 1996.

Darryl F. Roberts, Ardmore, for Appellant.

Robert B. Mills, Steve L. Lawson, Oklahoma City, for Appellee, Oklahoma Farm Bureau Insurance Company.

F. Lovell McMillin, S. Brent Bahner, Ardmore, for Appellee, Allstate Insurance Company.

John R. Denneny, Oklahoma City, for Appellee, Church Mutual Insurance Company.

ALMA WILSON, Chief Justice:

This appeal presents two questions. The first is a novel question of law: whether "other insurance" clauses in an uninsured/underinsured motorist (UM) policies may be used by insurers to escape UM liability. The second is a mixed question of law and fact: whether the district court erred in sustaining the demurrers to plaintiff's evidence. We answer the first question in the negative. We hold that 36 O.S.1991, § 3636 imposes a responsibility upon the UM insurer to protect its insured by good faith and fair dealing from and after the time of injury and that the insurer may not withhold payment to its injured insured on the sole basis that some other insurer has not paid. We answer the second question in the affirmative as to one insurer and in the negative as to the remaining two insurers. We hold that the trial court correctly sustained the demurrer to the evidence in favor of Church Mutual Insurance Company. We find that the plaintiff/appellant presented evidence to the trial court sufficient to withstand the demurrers

to the evidence of Allstate Insurance Company and Oklahoma Farm Bureau Mutual Insurance Company and hold that the trial court abused its discretion in sustaining the demurrers to the evidence in favor of Allstate Insurance Company and Oklahoma Farm Bureau Mutual Insurance Company.

Ray Pentz, appellant (Pentz), initiated this cause against Carey Mike Davis (Davis) to recover $126,068.80 as damages for bodily injury suffered in an automobile accident. Pentz added three UM insurers as defendants: Allstate Insurance Company (Allstate) and Oklahoma Farm Bureau Mutual Insurance Company (Farm Bureau) that had issued UM policies to Pentz; and Church Mutual Insurance Company (Church Mutual) that had issued a liability policy to Westgate New Life Church. Pentz voluntarily dismissed Davis as a party defendant. The issues between Pentz and the insurers proceeded to trial.

On September 12, 1985, Dick Frye, the Pastor of Westgate Newlife Church, and Robert Green and Pentz were traveling from Sulphur, Oklahoma to the Eastgate Newlife Church in Coalgate, Oklahoma, as a part of their ministry and mission for the Westgate Newlife Church. Robert Green was driving his mother's 1977 Chevrolet. Pentz was riding in the front passenger seat and Frye was in the back seat of the automobile driven by Green. Highway construction was in process at the intersection of Highway 99 and Highway 7 in Johnston County, Oklahoma. At the direction of a flagman at the construction site, Green stopped the automobile. While Green was stopped, a 1984 Oldsmobile Cutlass driven by Davis rear-ended Green's automobile. Pentz suffered bodily injury in the automobile accident.

Davis had automobile liability insurance with $10,000/$20,000 limits issued by Farm Bureau. The record does not reveal whether Pentz has received any payment from Davis' liability insurer. The automobile in which Pentz was a passenger was insured by American Western Home Insurance Company with $10,000/$20,000 limits on the liability and the UM insurance. Pentz did not submit a claim for damages to American Western Home Insurance Company under the liability or UM

coverage and has received no payment from American Western. Pentz had two automobile liability insurance policies with UM coverage issued by Allstate and Farm Bureau. Allstate and Farm Bureau admitted their respective UM policies were in effect at the time of the involved automobile accident. Church Mutual was the insurer for a general liability policy issued to Westgate Newlife Church, which did not include UM coverage. Church Mutual denied that it was required to offer UM coverage and that Pentz was an insured under its policy. The UM policies issued to Pentz and the Church Mutual liability policy were admitted into evidence.

At the conclusion of plaintiff's case-in-chief, each of the insurers demurred to plaintiff's evidence. The trial court sustained the demurrers, finding that Pentz failed to prove: 1) the identity of the driver of the rear-ending vehicle; 2) negligence of the driver of the rear-ending vehicle; 3) the uninsured status of the driver of the rear-ending vehicle or the rear-ending vehicle; 4) the insured status of Pentz under the policy issued by Church Mutual; and 5) exhaustion of the UM insurance on the vehicle in which Pentz was a passenger. Pentz's motion for new trial was overruled and Pentz appealed. The Court of Appeals reversed the trial court and remanded the cause for further proceedings. All three insurers filed petitions for certiorari, which have been previously granted by this Court.

Allstate and Farm Bureau have withheld any payment to Pentz under his UM policies because Pentz has not recovered from the UM insurer for the vehicle involved in the accident. They urge that the trial court properly found the UM insurance issued by Western Home for the vehicle in which Pentz was a passenger is the primary coverage and Pentz's own UM insurance is secondary coverage, under the "other insurance" clauses in their respective policies; and therefore they may withhold payment until the limits of liability of the UM coverage issued by American Western Home Insurance Company is exhausted.

■ The "other insurance" clauses in the involved UM policies do not speak in

terms of primary and secondary liability,[1] nor do they fix a priority for payments from the UM insurers for the same loss. The "other insurance" clause in Farm Bureau's policy requires proration of the liability when there is other insurance. The "other insurance" clause in Allstate's policy, on the other hand, provides that the UM coverage will be excess over all other insurance when Pentz is a passenger in another person's vehicle and that all other insurance must be exhausted. Excess insurance provisions are not priority-fixing. Rather, insurance is excess when the policy provides that the insurer is liable for some part of the loss that exceeds the amount of primary insurance which must be exhausted.[2] Excess provisions in a motor vehicle liability insurance policy are unenforceable if the provisions would allow the insurer to escape liability.[3]

Allstate and Farm Bureau argue that *Keel v. MFA Insurance Company*[4] supports the trial court's ruling that the UM insurance on the vehicle is primary and must be exhausted before the secondary insurers can be held liable. The need to distribute the burden of loss among UM insurers was anticipated in *Keel,* but *Keel* did not determine the time for payment by the UM insurer. *Keel* stands for the proposition that an insurer may not avoid its UM liability by inserting provisions which purport to condition UM coverage on other available insurance, and thus, *Keel* observed that "other insurance clauses" apply to priority of payment among the multiple UM coverages issued by a single insurer to the named insured.[5] This dispute, on the other hand, involves multiple insurers with policies covering an insured.

The controlling statute, 36 O.S.1991, § 3636,[6] is silent as to the priority of payments among multiple UM insurers and the time for the payments to be made. The statute does provide that the UM insurer making payment to its insured is entitled to the proceeds of any settlement or judgment against the person or organization legally responsible for the damages with subrogation rights.[7] It does not, however, set forth the priority of multiple UM insurers to such proceeds when the insured has recovered under two or more UM policies. Allstate and Farm Bureau would use the "other insurance" clauses as a complete escape from liability. This we will not allow.

Pursuant to § 3636, UM insurance is first-party coverage[8] that follows the person.[9] The UM insurer and its insured occupy a statutory relationship imbued with a

1. Primary liability means the insurer is liable for a loss without regard to any other insurance coverage, *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery,* 747 P.2d 947, 954 (Okla. 1987), while "secondary liability" indicates the priority of liability when two or more insurers are liable for the same loss.

2. *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery,* supra.

3. *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery,* supra. *Brown v. State Farm Mutual Automobile Insurance Company,* 163 Ariz. 323, 788 P.2d 56, 59 (1989).

4. 553 P.2d 153, 158 (Okla.1976).

5. *Keel,* 553 P.2d at 156. During the two decades since *Keel,* the Legislature has often made changes to § 3636. The 1979 amendment transformed UM coverage into first-party insurance and the UM insurer's exposure was extended to the total damages which exceed liability insurance limits. 1979 Okla. Sess. Laws, ch. 178, § 1. Subsequent amendments have reinforced the in-

tent to protect the public from uninsured motorists. Subsection (H) was added to § 3636 in 1990, requiring that the UM insurance application form inform the purchaser, the insured, that UM insurance will provide protection to the named insured, family members residing with the named insured, and passengers in your vehicle; and that the named insured and family members will be insured while riding in any vehicle or while a pedestrian. 1990 Okla. Sess. Laws, ch. 297, § 4.

6. The UM insurance policies herein were issued pursuant to 36 O.S.1981, § 3636. The applicable provisions of § 3636 remain unchanged in the referenced 1991 codification, unless otherwise noted.

7. 36 O.S.1991, § 3636, subsection (E).

8. *Bohannan v. Allstate Insurance Co.,* 820 P.2d 787 (Okla.1991).

9. *Shepard v. Farmers Insurance Company,* 678 P.2d 250 (Okla.1984); *State Farm Mut. Auto. Ins. Co. v. Wendt,* 708 P.2d 581 (Okla.1985).

duty of good faith and fair dealing.[10] The injured UM insured is entitled to swift payment from the UM insurer and, in the absence of a reasonable dispute as to the coverage or the amount of damages, the UM insurer may not withhold payment to its insured on the sole basis that the liability insurance has not been exhausted.[11] And, UM policy provisions will not be interpreted so as to defeat the statutory objective to protect insured persons who are injured by uninsured/underinsured motorists.[12] Following these established principles of UM law, we can only conclude that § 3636 imposes upon the UM insurer the responsibility to protect its injured insured by good faith and fair dealing, including swift payment, from and after the time of injury.

Swift payment under an UM insurance policy for undisputed damages suffered by an injured insured fulfills the express purpose of § 3636—protection of insured persons injured by uninsured/underinsured motorists. Swift payment will not destroy the primary, secondary, and tertiary priority among insurers, nor will it negate any provisions in the applicable UM insurance policies. This is so because § 3636 creates subrogation rights to guard against one insurer shifting the burden of loss to another or escaping the burden of loss through token settlements.

■ "Subrogation is a doctrine the law has devised for the benefit of one secondarily liable who has paid the debt of another."[13] Under § 3636, the injured insured has a right to an indemnity unburdened by contract provisions that control priority. The insurers, on the other hand, do not lose their rights to press for adjustment or apportionment of the indemnity among themselves as required by the law of insurance. Hence, payment to its injured insured entitles the UM insurer to seek a distribution of the burden of loss among all the insurers pursuant to the provisions of the applicable policies

and the law of insurance. Secondary insurers' claims may be litigated as ancillary, postjudgment proceedings among the affected insurers.

Our research reveals no general rule for distributing the burden of loss among UM insurers. The provisions in each of the involved UM policies, as well as all the circumstances between and among the injured insured and the UM insurers, must be considered. No one factor can rigidly control the distribution so as to impair satisfaction of the injured UM insured's damages up to the total insurance coverage available and defeat the objective of § 3636.

■ The trial court's finding that the UM insurance issued by Allstate and Farm Bureau was secondary liability is a premature apportionment of the burden of loss among the UM insurers because there has been no determination of Pentz's damages to establish whether all the policies are even implicated. On remand, the trial court may entertain a request by Allstate or Farm Bureau for an apportionment of the burden of loss among the UM insurers. Upon payment to the injured insured, the equitable remedies of subrogation and contribution are available to Allstate or Farm Bureau. Also because fewer than all of the insurers providing UM coverage available to the injured insured are parties to this cause, Allstate or Farm Bureau may add the other UM insurer, as well as the alleged tortfeasor, as necessary parties.

The trial court disposed of this cause upon the demurrers to Pentz's case-in-chief lodged by all three insurers. *Uptegraft v. Home Insurance Company*[14] sheds light on the proof required of the injured insured in a contract action against an UM insurer. *Uptegraft* refused to interpret § 3636 as requiring that the insured must establish all elements of a tort claim in an action against the UM insurer. *Uptegraft* concluded that

**10.** *Townsend v. State Farm Mutual Automobile Insurance Company,* 860 P.2d 236, 238 (Okla. 1993).

**11.** *Buzzard v. Farmers Insurance Company, Inc.,* 824 P.2d 1105, 1112 (Okla.1992).

**12.** *Cothren v. Emcasco Insurance Company,* 555 P.2d 1037 (Okla.1976); *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406 (Okla.1986).

**13.** *Sexton v. Continental Casualty Company,* 816 P.2d 1135, 1138 (Okla.1991).

**14.** 662 P.2d 681 (Okla.1983).

"the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of the damages."[15]

■ To withstand a demurrer to the evidence under *Uptegraft*, Pentz would be required to establish: 1) his insured status under the UM policies in effect at the time of the injury; 2) fault on the part of an UM motorist which gave rise to his personal injury; and, 3) the amount of damages that will compensate him for the personal injuries. Allstate and Farm Bureau admitted the existence of UM insurance coverage for Pentz as an insured which was in effect on the date of the rear-end accident. Davis admitted in his filed answer that the rear-end accident occurred at the time and place alleged. Testimony established that Pentz was injured when the vehicle driven by Davis rear-ended the vehicle in which Pentz was a passenger and that Davis had minimum liability coverage. Statements of Pentz' medical costs related to the injury suffered in the rear-end collision were admitted into evidence and Pentz testified as to his income capacity and loss. And, Pentz claims damages far in excess of minimum liability insurance requirements.

■ In sustaining their demurrers to Pentz's evidence, the trial court implicitly found an entire absence of proof tending to establish Pentz's right to recover from the insurers.[16] This is so, even though the insurers' demurrers to the evidence admitted every fact which the evidence tends to prove in the slightest degree and all inferences which can reasonably be drawn therefrom.[17] We find that Pentz's evidence tends to establish the necessary elements of the action against Allstate and Farm Bureau and is sufficient to withstand their demurrers to the evidence. We hold that the trial court erred in sustaining the demurrers to the evidence in favor of Allstate and Farm Bureau. We further find an entire absence of proof that Church Mutual was required to offer UM insurance when Westgate Newlife Church purchased the

general liability policy or that Pentz would have been an insured under the UM coverage that the church might have purchased from Church Mutual. We hold that the trial court correctly sustained the demurrer to the evidence in favor of Church Mutual.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED AS TO CHURCH MUTUAL INSURANCE COMPANY AND REVERSED AS TO ALLSTATE INSURANCE COMPANY AND OKLAHOMA FARM BUREAU MUTUAL INSURANCE COMPANY; AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

KAUGER, V.C.J., and HODGES, OPALA and WATT, JJ., concur.

LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur in part and dissent in part.

SUMMERS, Justice, concurring in part and dissenting in part, with whom LAVENDER and SIMMS, JJ., joins.

Although I concur with the majority's conclusion regarding the evidence of the driver's liability, and its result regarding the Church Mutual insurance policy, I must voice my concerns about the remainder of the opinion. The majority overrules *Hibbs v. Farmers Ins. Co. Inc.*, 725 P.2d 1232 (Okla.1986) without comment.

The purpose behind uninsured motorist coverage is to assure the availability of insurance for the protection of insured persons injured by uninsured or underinsured motorists. This purpose is not thwarted by permitting insurers, by clear and express language in an insurance policy, to make their coverage excess in certain situations. For example, in the present situation, the "excess" clauses only come into effect if there is other collectible insurance. *If there is other collectible insurance the injured insured person is protected, as are the goals of Section*

---

15. *Uptegraft*, 662 P.2d at 685.

16. *Downing v. First Bank in Claremore*, 756 P.2d 1227, 1229 (Okla.1988).

17. *Benke v. Stepp*, 199 Okla. 119, 184 P.2d 615 (1947).

*3636.* "Statutory policy is implicated only when insurers deny liability, not when they are in dispute as to which will provide primary coverage." *Equity Mutual,* at 955.

We upheld a clause substantially similar to those clauses in the present case in *Hibbs, supra.* There, an employee sued his employer's insurance company, alleging that he was entitled to UM benefits under the policy. The employer's UM insurer settled for less than the policy limits. The employee then sought UM benefits from his own insurer. His insurer refused payment because of an "Other Insurance" clause which stated that the coverage was excess over the policy limits other insurance. Relying on *Keel v. MFA,* 553 P.2d 153, 158 (Okla.1976), we upheld the clause, stating that these "Other Insurance" clauses could establish priority of payments. We determined that the employee was not entitled to UM benefits from his own insurer because he had failed exhaust the limits of the primary UM carrier. "Even though courts in most states have concluded that the 'excess' clause in an Other Insurance clause may not be used by insurance companies in most jurisdictions to avoid liability, the excess provision has been applied by judges to determine primary and secondary liability." Widiss, *Uninsured and Underinsured Motorist Insurance,* vol. 1, § 13.7.

That is exactly the idea we affirmed in *Keel,* 553 P.2d at 156. In *Keel* we specifically stated that " 'Other insurance clauses' are applicable to priority of payment." The majority not only overrules *Hibbs,* supra, but also calls into doubt a portion of *Keel.* If the majority's concern is the undisputed fact that Pentz did not exhaust the primary insurance before seeking benefits from the excess insurance carriers, the approach of *Buzzard v. Farmers Ins. Co. Inc.,* 824 P.2d 1105 (Okla. 1992) could be useful. There, we held that although primary liability insurance limits had not been exhausted, the injured person could recover under UM coverage *as long as the UM carrier was not obligated to pay that amount due and owing by the liability insurer.* In other words, if the UM plaintiff's damages exceeded the liability carrier's policy limits, the UM carrier would be liable up to its policy limits less the liability carrier's policy limits. *Id.* at 1111, 1112. While the present case is factually dissimilar from *Buzzard,* a *Buzzard*-like approach could be utilized to protect the injured insured from insurance companies who seek to completely avoid liability.

The majority ignores the impact of *Hibbs* on the case at bar. *Hibbs* could be affirmed in principle while also protecting the injured person, if the Court would adopt a *Buzzard*-like approach in UM cases with "other insurance" clauses such as this one. This approach would not defeat the purpose of uninsured/underinsured motorist coverage. It would give full effect to the UM coverage by protecting the insured, but allow the insurer to avoid risks not covered by the policy and the premium charged.

Without any explanation the majority decides that summary judgment was properly granted in favor of Church Mutual. While I agree that Church Mutual was not required to offer UM coverage, I would address the issue in more detail, as it is an issue of first impression.

The multi-peril policy issued by Church Mutual did not offer UM coverage. The question then becomes whether under Oklahoma statutes it was required to offer such coverage. In *Moser v. Liberty Mutual Ins. Co.,* 731 P.2d 406 (Okla.1987), we held that an umbrella policy was not required under 36 O.S.1981 § 3636 to provide UM coverage. An umbrella policy is a policy which provides excess liability coverage. *Id.* at 407. The legislative intent of Section 3636 was to required it to apply to all "automobile liability insurance policies (or motor vehicle liability policies as defined in 47 O.S. § 7–324)." *Id.* at 409. This Court concluded that the intent behind Section 3636 was satisfied by applying it to primary liability policies.

In *MacKenzie v. Empire Ins. Co.,* 113 Wash.2d 754, 782 P.2d 1063 (1989), the Washington Supreme Court was faced with the question of whether a multi-peril policy was required to offer UM coverage. The court held that it was exempt from mandatory UM statutes only if the policy provided only excess coverage (much like an umbrella policy). If the multi-peril policy was primary, it was not exempt. In this case the multi-peril

policy issued by Church Mutual specifically provided automobile liability coverage. However, that section of the policy contained a clause which stated that "[t]he insurance afforded by this endorsement shall be excess insurance over any other valid and collectible insurance available to the insured." It contained the same "excess insurance" clause with regard to hired automobiles.

Thus, this multi-peril policy does not appear to be a primary liability policy. As such, it does not fall within the mandate of Section 3636, and the company was not required to offer UM coverage. Because it does not provide UM coverage and because Section 3636 does not require it to provide UM coverage, Church Mutual is not liable under its multi-peril policy. Summary judgment on that policy was proper.