[Nos. 42308-8-I; 42703-2-I.   Division One.   June 14, 1999.]

DAVID DIAZ, ET AL., *Appellants*, v. NATIONAL CAR RENTAL SYSTEMS, INC., ET AL., *Respondents*.

BECKER, J., dissents by separate opinion.

*Finch & Levandowski*, by *Lyle David Finch*, for appellants.

*Betts, Patterson & Mines, P.S.*, by *Tracy R. Antley-Olander*, for respondent National Car Rental Systems.

*Leonard D. Flanagan* (*James E. Green, Jr.*, and *Mark E. Dreyer*, of counsel); and *Don Meldrum Gulliford*, for respondent Philadelphia Indemnity Insurance Company.

BAKER, J. — Marilyn Walker and Betty Pulliam, together with David Diaz, and Walker's minor children (collectively "appellants"), were injured when an uninsured motorist struck the National Car Rental Systems (National) rental car they were in. The appellants had purchased liability insurance from National, and supplemental liability insurance (SLI) from Philadelphia Indemnity Insurance Company (Philadelphia), brokered by National.

Appellants filed suit against National and Philadelphia demanding underinsured motorist (UIM) coverage in the amount of one million dollars, equal to the liability limit of the supplemental liability policy. The trial court granted National's summary judgment motion, ruling that National was liable only for up to $50,000 in UIM coverage, as provided in its policy. The trial court also granted Philadelphia's summary judgment motion, ruling that "the subject SLI Policy does not provide any coverage for any of the Plaintiffs' claims . . . ."[1] Appellants appeal the summary judgment orders.

Vehicle liability policies are required to provide underinsurance coverage unless the coverage is specifically rejected in writing by the insured.[2] The National policy contained the following UIM provision:

I understand [and] agree that the Company and I reject "Uninsured Motorist", "Underinsured Motorist protection" or minimum "No Fault" or any supplementary No-Fault protection, unless such protections are required to be provided by applicable law and cannot be rejected. If required and not rejectable, the limits will be the minimum required by law in the state in which the Vehicle is rented. These protections, if required by law, shall be provided on the same basis as the liability protection provided in this Agreement.[3]

Although the policy contained this standard UIM rejection language, the appellants did not specifically reject UIM.[4]

RCW 48.22.030(3) provides that UIM "[c]overage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage . . . ." The National policy provided liability coverage at

---

[1]Clerk's Papers at 310-11.

[2]See Cann v. King County, 86 Wn. App. 162, 163, 937 P.2d 610 (1997) (citing RCW 48.22.030(2)); Galbraith v. National Union Fire Ins. Co., 78 Wn. App. 526, 531, 897 P.2d 417, review denied, 128 Wn.2d 1005 (1995).

[3]Clerk's Papers at 122.

[4]See Alamo Rent A Car, Inc. v. Schulman, 78 Wn. App. 412, 415, 897 P.2d 405 (1995) (citing Corley v. Hertz Corp., 76 Wn. App. 687, 693, 887 P.2d 401 (1994), review denied, 128 Wn.2d 1007 (1996)).

"the minimum limits required by the automobile financial responsibility or compulsory insurance laws of the state in which the Vehicle is rented."[5] Because the appellants rented the car at Seattle-Tacoma International Airport, Washington's financial responsibility statute applies.[6] That statute requires a minimum of $50,000 of liability coverage, per accident, where two or more persons are injured.[7] Thus National is required to provide up to $50,000 to the appellants for UIM coverage.

National does not dispute that it must provide $50,000 of UIM coverage to the appellants. Rather, the dispute surrounds the SLI policy the appellants purchased from Philadelphia, through National, at the same time that they purchased National's policy. The SLI policy provides up to $1,000,000 in supplemental liability coverage. Appellants argue that National must provide $1,000,000 of UIM coverage under RCW 48.22.030(3) because the SLI policy qualifies as third party liability coverage.

■ Philadelphia's policy is a supplemental, or excess policy, which is excluded from the UIM statute. Specifically, "[t]he coverage required to be offered under this chapter is not applicable to . . . policies which apply only as excess to the insurance directly applicable to the vehicle insured."[8]

The insurance policy is clear and precise in its language, that it provides only excess coverage. The capitalized, bold title of Philadelphia's policy reads "**RENTAL SUPPLEMENTAL LIABILITY INSURANCE EXCESS POLICY**."[9] In the definition section of the policy, "Rental supplemental liability insurance" is defined as "optional excess liability coverage elected by a 'renter' at the origin

---

[5]Clerk's Papers at 121.

[6]*See Corley v. Hertz Corp.*, 76 Wn. App. at 691-92.

[7]RCW 46.29.090(1).

[8]RCW 48.22.030(2).

[9]Clerk's Papers at 125.

of a 'rental agreement' and for which premium is paid."[10] Under the capitalized title "EXCLUSIONS," the second provision excludes "Liability arising out of, or benefits payable under, any uninsured or underinsured motorist law, first party benefit law or no-fault law, or any similar law to the foregoing, in any jurisdiction."[11] Further, directly above appellants' signatures on the rental form is a capitalized portion which states that they "HAVE RECEIVED AND AGREE TO: ALL TERMS AND CONDITIONS OF THIS RENTAL AGREEMENT INCLUDING THE SEPARATE FOLDER DELIVERED TO ME WITH THIS RENTAL DOCUMENT . . . ."[12] This uncomplicated folder states that the SLI coverage applies only to renter liability to third parties and specifically excludes "[l]iability arising out of, or benefits payable under, any uninsured or·underinsured motorist law, first party benefit or no-fault in any state."[13] Under the rental agreement, National's minimum limits liability policy is primary whenever the renter opts to purchase the SLI coverage. The SLI coverage, then, is excess to National's coverage whenever it is in existence.

In summary, the SLI policy issued by Philadelphia does not provide UIM coverage to the appellants by the express terms of its contract. Philadelphia is not required to provide UIM coverage because this policy is an excess policy, which is exempted from the UIM requirement. National is not required to provide UIM coverage up to Philadelphia's liability coverage because of the excess nature of the SLI policy, and because the third party liability level is established within National's policy.

■■ The appellants argue that the clerk at National told them they had "full" coverage and thus, despite the plain language of the policy, Philadelphia and National are estopped from utilizing RCW 48.22.030(2)'s exemption for

---

[10]Clerk's Papers at 126.

[11]*Id.*

[12]*Id.* at 120.

[13]*Id.* at 123.

excess policies. The general rule for equitable estoppel in insurance cases is that "while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, yet [sic] under no conditions can the coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel."[14] There are exceptions to this general rule; however in order for the appellants to prevail on their equitable estoppel argument, they must prove that National's agent's "full" coverage comment was inconsistent with its later denial of full coverage and that they "reasonably relied on the statements or conduct and would be injured by a contradiction or repudiation of them."[15]

If the appellants did rely on the full coverage statement, it was unreasonable. This case is similar to *Shows v. Pemberton*, where this court declined to extend UIM coverage to Ms. Shows simply because she relied on the agent's statement that she had full coverage.[16] The appellants' misplaced reliance cannot expand very clear language in the policy and accompanying brochure that explained and limited the coverage.

Affirmed.

KENNEDY, C.J., concurs.

BECKER, J. (dissenting) — I respectfully disagree with the disposition reached by the majority in this case. National Car Rental sold the renters primary liability coverage with limits of $1 million. By law, National must make available underinsured motorist coverage in the same amount.

The underinsured motorist statute is to be liberally construed in order to provide broad protection against

---

[14]*Shows v. Pemberton*, 73 Wn. App. 107, 111, 868 P.2d 164 (1994) (citing *Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of Am.*, 189 Wash. 329, 336, 65 P.2d 689 (1937)).

[15]*Shows*, 73 Wn. App. at 110 (citing *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992)).

[16]73 Wn. App. 107, 112-13, 868 P.2d 164 (1994).

financially irresponsible motorists.[17] The statute requires insurers of automobiles to offer UIM coverage with the same limits as liability coverage.[18] UIM coverage becomes part of every automobile coverage by operation of law unless the insured party rejects it in a written waiver that is affirmative, conscious, specific, and unequivocal.[19]

National took $8.95 per day from the renter in this case in exchange for a promise of primary liability insurance coverage with limits up to $1 million. At no time did National ask her if she wanted to reject UIM coverage. Now, in order to avoid paying out on a UIM claim, National relies on the statutory exception for excess or umbrella policies. The coverage required to be offered under the UIM statute is "not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured."[20] National contends that its SLI coverage, underwritten by Philadelphia in a separate contract between National and Philadelphia, is excess to the coverage provided in the National rental agreement.

The majority offers three reasons for agreeing with the insurers that the statutory exception applies. The first is that the word "excess" appears in the title of the *Philadelphia* policy and in its definition section.[21] This is not a satisfactory reason. Whether coverage can accurately be described as excess must depend not on its label but on

---

[17]*Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 420, 841 P.2d 1244 (1992) (citing *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979)).

[18]*Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 575, 817 P.2d 841 (1991).

[19]*Clements v. Travelers Indem.*, 121 Wn.2d 243, 255, 850 P.2d 1298 (1993); *Corley v. Hertz Corp.*, 76 Wn. App. 687, 693, 887 P.2d 401 (1994), *review denied*, 128 Wn.2d 1007, 910 P.2d 481 (1996).

[20]RCW 48.22.030(2).

[21]Majority at 145-46. The word "excess" does not appear in the summary brochure about SLI that National provides to renters. The back of the brochure notes in small print that it is not intended to act as a substitute for the actual policy, a copy of which with its complete terms and conditions "is available for your inspection."

how it operates in relationship to some other kind of coverage.[22]

Second, the majority mentions that the SLI folder that was given to the renter specifically excludes UIM coverage.[23] This is circular reasoning because it assumes the result. An underinsured motorist exclusion is effective only if the liability coverage is first determined to be excess. Otherwise, the exclusion is void.[24]

Third, the majority states, "Under the rental agreement, National's minimum limits liability policy is primary whenever the renter opts to purchase the SLI coverage. The SLI coverage, then, is excess to National's coverage whenever it is in existence."[25] But if National's minimum limits liability policy becomes "primary" only when the insured opts to accept SLI, then it is not truly primary coverage, and the SLI coverage is not excess.[26] Instead, it is all one coverage.

Primary insurance coverage is coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability.[27] Primary coverage, in the words of the UIM statute, is insurance "directly applicable" to the vehicle insured. Excess coverage is not "directly applicable" because the liability of an excess insurer does not arise until after the limits of the

---

[22]*See MacKenzie v. Empire Ins. Co.*, 113 Wn.2d 754, 756-57, 782 P.2d 1063 (1989) ("by whatever name such policy may be designated, in order for the automobile liability coverage contained in the policy to be exempt from Washington's UIM statute, the policy must by its terms only provide coverage in *excess* of the primary automobile coverage applicable to the vehicle in question.").

[23]Majority at 146.

[24]*See Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 251, 850 P.2d 1298 (1993) (courts will void any provision in an insurance policy "which is inconsistent with the statute, which is not authorized by the statute, or which thwarts the broad purpose of the statute.").

[25]Majority at 146.

[26]*See Transport Indem. Ins. Co. v. Rollins Leasing Corp.*, 14 Wn. App. 360, 360, 541 P.2d 1226 (1975) ("[I]t is obvious that there can be no 'excess' insurance in the absence of 'primary' insurance."), *overruled on other grounds by Mission Ins. Co. v. Allendale Mut. Ins. Co.*, 95 Wn.2d 464, 626 P.2d 505 (1981).

[27]BLACK'S LAW DICTIONARY (citing *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 178 Cal. Rptr. 908, 910 (1981)).

coverage under the primary policy have been exceeded.[28] To be exempt from the requirement to offer UIM coverage, a policy must operate "only as excess" to primary coverage.

Coverage that operates as a "continuation"[29] of the primary policy may fit the statutory exception as an excess policy. For example, an insurer may designate its first $50,000 in liability coverage as primary, with the attendant obligation to offer UIM coverage, and then designate optional liability coverage from $50,000 up to $1 million as excess, without the obligation to offer UIM coverage. In such a case, the excess liability coverage does not arise immediately or directly when an accident happens. If the primary coverage is adequate to pay all the damages, the excess coverage never attaches. It operates only as excess to the insurance directly applicable to the vehicle insured.

National's "supplemental" liability insurance (SLI) is not excess to National's minimum limits liability policy as a continuation of a primary policy. National's minimum limits liability policy did not become primary until the renter purchased SLI. The renter did not obtain primary coverage for the first $50,000 from National simply by signing the rental agreement. She obtained primary coverage from National for the first $50,000 only by agreeing to pay National an additional $8.95 per day. This was not a transaction where the renter first purchased basic primary coverage of $50,000 and then purchased "inherently different"[30] excess coverage. This was a transaction where the renter made a single purchase of basic primary coverage from National, with limits of up to $1 million.

The terms of the rental agreement explain that National will not provide primary liability coverage *unless* the renter purchases supplemental insurance:

> An automobile liability insurance policy or qualified self-

---

[28]*See Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 9, 13, 665 P.2d 887 (1983).

[29]*See Thompson v. Grange Ins. Ass'n*, 34 Wn. App. 151, 157, 660 P.2d 307, *review denied*, 99 Wn.2d 1011 (1983).

[30]*See MacKenzie*, 113 Wn.2d at 758, n.5 (citing *Trinity Universal Ins. Co. v. Metzger*, 360 So. 2d 960, 962 (Ala. 1978)).

insurance arrangement provides the Authorized Driver with the minimum limits required by the automobile financial responsibility or compulsory insurance laws of the state in which the Vehicle is rented. I understand and agree that the liability protection provided in this section will be withdrawn and will not apply if there is any other applicable insurance. However, the Company [National] will provide primary liability insurance protection regardless of other applicable insurance available if:

a. I accept optional Supplemental Liability Insurance at the beginning of rental; or

b. Primary liability protection is provided pursuant to a separate commercial account agreement; or

c. If, by operation of law, the Company [National] is required to provide primary liability protection.

If a, b or c above do not apply, but by operation of law, the Company [National] is not entitled to withdraw its coverage and is required to provide liability protection for the Vehicle, the protection provided under this Agreement shall be in excess of all other insurance available to the Authorized Driver.[31]

National provides coverage in the first sentence but takes it back in the second. The second sentence is an escape clause, in which National's coverage "is withdrawn and will not apply if there is any other applicable insurance." The renter who does not check off the SLI option has not purchased primary insurance directly applicable to the rental vehicle and immediately available upon the occurrence of an accident. That renter has purchased a conditional type of insurance that will pay only after it is determined the renter has no other insurance.[32]

For those renters who do check off the SLI option, on the

---

[31]Terms and Conditions of Rental Agreement, section 9. Subsection (c) does not apply. A policy filed to satisfy the Financial Responsibility Act, RCW 46.29, does not thereby become primary. *Federated American Ins. Co. v. Hansen*, 17 Wn. App. 456, 458-59, 563 P.2d 1303 (1977).

[32]See 8A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4906 at 350 (rev. vol. 1981).

other hand, National unequivocally agrees in the third sentence to provide primary liability coverage "regardless of other applicable insurance." As stated in National's explanatory brochure, *"National's* Supplemental Liability Insurance (SLI) option provides you . . . with up to $1,000,000 in protection. . . . In the event you do have additional liability coverage available, *our* $1,000,000 of protection would ordinarily have to be completely exhausted before your personal insurance would become involved."[33] This coverage does not operate "only as excess" to a primary policy. It does not pick up after $50,000 in primary coverage is exhausted. It is itself the primary coverage.

Having sold the renter a single primary liability policy, National now attempts to designate only the first $50,000 of its coverage as primary and the rest as excess. But according to APPLEMAN, on whom our courts often rely in discussing excess and primary coverage issues,[34] an attempt by a primary insurer to escape responsibility or to limit a portion of its risk by labeling it "excess" does not qualify the coverage as a true umbrella or excess policy.[35]

The large premium National charges for its SLI option reinforces the position that SLI is not a true excess policy. As noted by APPLEMAN, one characteristic of umbrella policies is that they pick up exceptional hazards at a "small premium."[36] Annualized, the premium collected by National from purchasers of SLI amounts to $3,266.75 per car per year. This is a sizable premium to pay on one car if all it insures against is the risk of liability for damages above $50,000, especially since authorized drivers must be over age 25.

---

[33]"Supplemental Liability Insurance Renter Option Purchased At Time Of Rental" brochure. National's reference to *"our* $1,000,000 of protection" contradicts its claim that SLI is not part of its contract with the renter (emphasis added).

[34]*See, e.g., MacKenzie*, 113 Wn.2d at 757.

[35]8A APPLEMAN, *supra* § 4909.85 at 453-54.

[36]*MacKenzie*, 113 Wn.2d at 757 (quoting 8C APPLEMAN, *supra* § 5071.65 at 107).

When the renter initialed the "accept SLI" line on the rental agreement, she purchased basic primary liability coverage directly applicable to the vehicle she was insuring. In fact, the option to purchase SLI was the only opportunity she had to protect herself with primary liability coverage for the rental vehicle. This is exactly the type of transaction in which, according to the statute, the insured must be given a chance to accept or reject UIM coverage up to the same limits.

Holding National liable for UIM coverage up to $1 million would not violate notions of fundamental fairness.[37] The statutory design merely requires National to provide UIM coverage at the same amount as the limits of the liability coverage, unless the renters reject it. National is free to charge higher rates to renters who want UIM coverage.

National could avoid the responsibility of offering UIM coverage for damages over $50,000 by removing the escape clause and restructuring its rental agreement so that a renter need not make a supplemental purchase in order to obtain primary coverage.[38] If the rental agreement standing alone provided primary coverage—i.e., coverage that pays the first $50,000 even when there is other applicable insurance—then a supplemental policy picking up damages above $50,000 would be truly excess within the meaning of the statutory exception.

According to APPLEMAN, an escape clause in an automobile rental agency contract is against public policy and should not be enforced in any event:

> As one of the inducements to rent automobiles, Hertz, Avis, and other such companies represent that liability insurance in a large sum is afforded, perhaps unlimited in amount. A point

---

[37]*See Van Vonno*, 120 Wn.2d at 426.

[38]*Compare* the nonprimary liability coverage in the National rental agreement to the Hertz rental agreement described in *Corley*, 76 Wn. App. at 689, warranting "that the protection described in this paragraph is primary with respect to any insurance coverage You or an Authorized Operator may have."

is made of collision insurance; a separate premium must be paid for that. But no exception or limitation is called to the renter's attention so far as liability insurance is concerned. As a matter of fact, advertising calls attention to the fact that one can call in advance for a car, race through an airport, leap over baggage, arrive at the counter, present a credit card, sign one's name, and pick up the keys. No comment is made about reading the contract form which contains an escape clause pertaining to liability insurance. Such may be tantamount to fraud; certainly it is a concealment, in light of the promised benefits; and it would be in violation of public policy not to grant the protection promised.[39]

The policy concerns identified by APPLEMAN apply with equal force when the escape clause is part of a complex scheme designed to avoid the statutory mandate to provide underinsured motorist coverage.[40] The SLI coverage option takes advantage of the haste with which travelers must make insurance choices as they stand, distracted and impatient, at the counter of an airport rental car agency. National offers an appealingly simple choice—primary liability coverage up to $1 million in exchange for a large premium. Then, when the renter who has paid the premium is hit by an underinsured motorist, National attempts to restrict its underinsured motorist coverage to the lower amount it would have to pay if the renter had *not* paid the large premium. This violates public policy and we should not allow it.

It is clear, in short, that National must provide UIM coverage to the appellants up to the $1 million limits of its SLI coverage. The picture is less clear with respect to Phil-

---

[39]8A APPLEMAN, *supra* § 4906, at 351 (contrasting rental agency policies to garage policies where no representation is made concerning insurance and the insured's use of a garage car is permitted only as an accommodation).

[40]*See generally, id.* § 4906 (the problem of overlapping insurance); § 4910 at 457-458 (1981) ("Escape Clauses . . . Rental agencies occasionally use such a clause which well could violate public policy, since organizations use, as part of their appeal, the fact that insurance is provided. If such representations are made, there should be no undisclosed strings attached.").

adelphia. Philadelphia issued its "Rental Supplemental Liability Insurance Excess Policy" to National, the "policyholder." The Philadelphia policy incorporates the National rental agreement. National remits a premium to Philadelphia based on days of exposure. The renter becomes an "insured" under the Philadelphia policy by initialing the "accept SLI" line on the National rental agreement. These provisions make the renter's relationship to Philadelphia very similar to the renter's relationship to National. On the other hand, the Philadelphia policy makes no representation that it provides basic primary coverage. The Philadelphia policy requires National, not the renter, to maintain underlying insurance.[41] Philadelphia agrees to pay only the difference between the "underlying insurance" maintained by National and the $1 million limit identified in the policy that Philadelphia issued to National.[42] With these provisions, I believe Philadelphia has sufficiently segregated its own coverage from National's to be regarded as an excess insurer. If the responsibility to assure compliance with the UIM statute is placed upon National, the statutory purpose will be adequately served.

I would hold that for purposes of the analysis required by the UIM statute, the renter purchased primary liability coverage from National with limits up to $1 million. Because the renter did not reject UIM coverage, National must now provide her and her passengers with UIM coverage up to the same limit. I would reverse and remand for entry of summary judgment against National.

Review granted at 139 Wn.2d 1008 (1999).

---

[41]Rental Supplemental Liability Insurance Excess Policy, Item 3.

[42]*Id.* Item 4.