[No. 33584-1-II.   Division Two.   April 4, 2006.]

KERRY CHRISTAL, *as Personal Representative, Appellant*, v. FARMERS INSURANCE COMPANY OF WASHINGTON, *Defendant*, FARMERS INSURANCE EXCHANGE, *Respondent*.

188

*Ben Shafton* (of *Caron, Colven, Robison & Shafton, P. S.*), for appellant.

*Nancy K. McCoid* (of *Soha & Lang, P.S.*), for respondent.

¶1 HOUGHTON, J. — Kerry Christal, as personal representative of the estate of Richard Christal (Estate), ap-

peals from a trial court summary judgment order denying insurance coverage for Richard Christal's death. We affirm.

## FACTS

¶2 An underinsured motorist struck and killed Richard Christal while he was riding his motorcycle. At the time of the accident, the Christals owned various insurance policies issued by Farmers Insurance Company of Washington and Farmers Insurance Exchange (Farmers).[1] Four policies covered different passenger cars and one covered Christal's motorcycle. Each passenger car policy provided underinsured motorist (UIM) coverage, but the motorcycle policy did not.

¶3 The Christals also purchased an umbrella policy, the interpretation of which is at issue in this appeal. The umbrella policy provides up to $1,000,000 in liability coverage. It also includes a UIM endorsement for coverage "to the extent" such coverage is part of underlying policies listed in the umbrella policy. Clerk's Papers (CP) at 30. The endorsement states:

> For the additional premium paid, it is agreed that this policy will provide [UIM] Coverage(s) payable to you and any other **insured** under this policy, to the extent that either or both coverages are part of the **underlying insurance**. The limit of liability for [UIM] Coverage is equal to the coverage limit shown in the Limits of Liability section of the policy Declarations Page. The [UIM] Coverage limit applicable in the event of an **occurrence** is not increased regardless of the number of covered **autos, insureds**, claims made or vehicles involved in the accident.[2]

CP at 30. The UIM endorsement excludes coverage for recreational vehicles. Except for the recreational vehicle exclusion, the UIM endorsement is otherwise unqualified.

---

[1] Farmers Insurance Exchange issued the umbrella policy, while Farmers Insurance Company issued the vehicle policies. Following voluntary dismissal, the suit proceeded against Farmers Insurance Exchange alone. For convenience, we refer to it as Farmers.

[2] The insurance policy defines the bold-faced terms separately.

The policy defines "underlying insurance" as "the insurance scheduled in the Declarations." CP at 24.

¶4 The declarations page of the umbrella policy schedules the four passenger car policies but does not schedule the motorcycle policy. Each of the four passenger car policies provides for UIM insurance but exclude coverage for incidents related to uninsured vehicles "owned or available for regular use" of the insured. CP at 43. Two of these policies list Christal as a named insured.

¶5 After filing a claim that Farmers denied, the Estate sued for a judgment declaring the availability of UIM coverage under one or more of the policies. Following discovery, the Estate voluntarily dismissed its claim for UIM coverage under any of the four passenger car policies. But the Estate pursued its claim that the umbrella policy provided such coverage for the motorcycle accident. Both sides moved for summary judgment. The trial court granted Farmers' motion and denied the Estate's.

¶6 The Estate appeals.

## ANALYSIS

¶7 We review an order on summary judgment de novo and engage in the same inquiry as the trial court. *Butzberger v. Foster*, 151 Wn.2d 396, 401, 89 P.3d 689 (2004). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Butzberger*, 151 Wn.2d at 401. We consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *N. Pac. Ins. Co. v. Christensen*, 143 Wn.2d 43, 47, 17 P.3d 596 (2001). Summary judgment is appropriate in this case because there are no disputed facts and coverage depends solely on the insurance policy language. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997).

¶8 We interpret an insurance policy de novo as a question of law. *Butzberger*, 151 Wn.2d at 401. We construe an insurance policy as a whole, giving full force and effect to each clause. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002).

¶9 Where policy language remains clear and unambiguous, we enforce the provisions as written and do not modify the policy or create ambiguity where none exists. *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 797, 881 P.2d 1020 (1994). Ambiguity exists if the policy is susceptible to more than one reasonable interpretation. *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456-57, 760 P.2d 337 (1988). We construe an ambiguous provision in favor of the insured. *Transcon.*, 111 Wn.2d at 457.

¶10 When analyzing an insurance policy and determining whether an ambiguity exists, we view the language as would an average purchaser of insurance. *Overton*, 145 Wn.2d at 424 (citing *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988)). In doing so, we do not engage in a "strained or forced construction" that would lead to absurd results. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). Nor do we interpret policy language in a way that extends or restricts the policy beyond its fair meaning or renders it nonsensical or ineffective. *Morgan*, 86 Wn.2d at 434-35.

¶11 We must apply the definitions set forth in an insurance policy. *Overton*, 145 Wn.2d at 427. But we give undefined terms their plain, ordinary, and popular meaning, as defined in standard English dictionaries. *Overton*, 145 Wn.2d at 428.

¶12 Both parties agree that the key language of the umbrella policy is that UIM coverage is provided "to the extent that" such coverage is "a part of" the underlying insurance. CP at 30. Farmers emphasizes the former phrase and the Estate emphasizes the latter.

¶13 The Estate concedes that neither the motorcycle policy nor any of the four passenger car policies provides

UIM coverage for Christal's injuries. It acknowledges that the motorcycle accident falls within the passenger car policies' exclusion for incidents related to an uninsured vehicle owned by an insured. Nevertheless, the Estate argues that the umbrella policy provides such coverage because that policy specifically excludes only recreational vehicles. The Estate reasons that because two of the passenger car policies that provide UIM coverage list Christal as a named insured, the Estate is entitled to UIM coverage under the umbrella policy, except for incidents related to recreational vehicles.

¶14 Farmers responds that the umbrella policy plainly provides excess UIM coverage only for incidents that are covered by the underlying insurance policies. In its view, because UIM coverage is not available under those policies for the incident involving Christal's motorcycle, it is not available under the umbrella policy. Farmers asserts that "to the extent that" are clearly words of limitation meaning that the umbrella policy only provides UIM coverage for a particular incident if the underlying policy provides UIM coverage for that incident. In such cases, the umbrella policy provides coverage over and above the limits of the underlying policy.

¶15 In the Estate's view, so long as UIM coverage is "a part of" the underlying insurance in any way, the umbrella policy provides UIM coverage for the insured named in the underlying policy for any incident except one related to a recreational vehicle.

¶16 The Estate's interpretation might have merit if, instead of "to the extent that," the umbrella policy provided UIM coverage "if" or "when" it was a part of the underlying insurance. But the policy does not so provide.

¶17 *Webster's Dictionary* defines "extent" as "**5 a** (1) : the range (as of inclusiveness or application) over which something extends : SCOPE, COMPASS, COMPREHENSIVENESS . . . 2 : the point or degree to which something extends . . . : the limit to which something extends." Webster's Third New International Dictionary 805 (1976). As

used in the umbrella policy's UIM endorsement, the phrase "to the extent that" is synonymous with "within the scope of." An average purchaser of insurance would understand that the umbrella policy expands the amount, not the scope, of UIM coverage, thus providing excess UIM coverage over the underlying coverage only if the insured qualifies for UIM coverage through the underlying policy. The UIM endorsement is not fairly susceptible to a contrary interpretation.

¶18 Moreover, the Estate's interpretation would lead to absurd results. If it were true that the umbrella policy provided UIM coverage for any incident except one relating to recreational vehicles, an insured could obtain UIM coverage for any number of vehicles for a single premium. This would nullify the underlying policies' exclusion for uninsured vehicles owned by an insured; the Christals would only have to pay one premium for UIM coverage for an unlimited number of vehicles they owned. That the Christals paid four distinct premiums for UIM coverage under each of their four different auto policies suggests that they understood the umbrella policy did not provide such blanket coverage.

¶19 The Estate also argues that the underlying policies' exclusion for Christal's motorcycle-related injuries does not apply to the umbrella policy because Farmers did not expressly incorporate the exclusion. The Estate asserts that Farmers could have used language providing UIM coverage " 'only to the extent that insurance is provided to such additional Insured thereunder.' " Appellant's Br. at 13 (quoting *Estate of Taylor v. St. Paul Fire & Marine Ins. Co.*, 268 F. Supp. 2d 873, 878 (N.D. Ohio 2002) (holding that an umbrella policy incorporated the exclusions of an underlying insurance policy)). But no meaningful difference exists between the language the Estate quotes, which it admits would limit excess UIM coverage to incidents covered by underlying policies, and the language Farmers used in the umbrella policy here.

¶20 The Estate further argues that Farmers could have used "follow form" language to specifically incorporate by reference the terms and conditions of the underlying insurance policies if it wanted the exclusions to apply to the umbrella policy. In support, the Estate cites *Cordero v. Potomac Insurance Co. of Illinois*, 794 A.2d 897 (Pa. Super. Ct. 2002). There, the umbrella policy included the language: "This coverage is subject to the same terms, conditions, agreements, exclusions, and definitions as any underlying insurance stated in the Declarations." *Cordero*, 794 A.2d at 901 (emphasis omitted). The *Cordero* court held that the policy plainly incorporated the terms of the underlying insurance, such that excess coverage "existed" or "was available" only if the underlying policy provided coverage. The language chosen by Farmers here adequately, and plainly, informs the insured that the policy provides UIM coverage only for incidents covered by the underlying insurance.

¶21 The Estate further argues that the umbrella policy's recreational vehicle exclusion becomes superfluous if we interpret the policy as incorporating the exclusions of the underlying policies. According to the Estate, it becomes superfluous because the underlying policies exclude such vehicles.

¶22 The underlying policies extend liability coverage to accidents involving any "private passenger car, a utility car, or a utility trailer," defined, in part, as vehicles designed for use on public roads. CP at 40. The umbrella policy excludes UIM coverage for any "recreational vehicle," defined, in part, as a vehicle designed for off-road use. CP at 24. The underlying policies provide coverage for bodily injury or property damage arising out of "the ownership, maintenance, or use" of the specified vehicles, thus *implicitly* excluding coverage for recreational vehicles. CP at 146. The umbrella policy *expressly* excludes coverage for bodily injury or property damage arising out of "the ownership, maintenance, use, *operation, entrustment to others, loading or unloading* of any recreational vehicle *owned by, rented to*

*or controlled by* the insured." CP at 30 (some emphasis omitted; some emphasis added). Contrary to the Estate's contention, the umbrella policy's recreational vehicle exclusion is broader than the exclusion in the underlying policies and thus not superfluous.

¶23 The Estate also suggests that the UIM coverage should be read expansively here because the umbrella policy is not merely an excess policy but also provides primary insurance. Whereas excess policies provide coverage over and above that available through an underlying policy, an umbrella policy may provide primary coverage in areas not otherwise covered. *Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 45 Wn. App. 111, 119, 724 P.2d 418 (1986) (citing 8A JOHN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4909.85, at 452-53 (rev. vol. 1981)). But the name given to an insurance policy is not necessarily controlling as to whether the policy is excess or primary. *Diaz v. Nat'l Car Rental Sys., Inc.*, 143 Wn.2d 57, 64 n.2, 17 P.3d 603 (2001). A policy's function, not its name, determines its character. *Diaz*, 143 Wn.2d at 64 n.2. A primary policy provides coverage immediately upon the occurrence of an accident, while an excess policy provides coverage only after exhausting the primary coverage. *Diaz*, 143 Wn.2d at 62.

¶24 Here, the umbrella policy serves primarily as a liability policy, providing coverage for claims against the insured, with a limited UIM endorsement providing coverage for claims payable to the insured. The "coverage" section of the umbrella policy states: "If a claim is made anywhere in the world against any insured, we will, subject to definitions, exclusions, terms and conditions of this insurance, pay damages caused by an occurrence . . . on the insured's behalf." CP at 270 (boldface omitted). But the UIM endorsement provides additional UIM coverage "payable to you and any other insured under this policy, to the extent that [UIM coverage is] a part of the underlying insurance." CP at 275 (emphasis omitted).

¶25 The umbrella policy functions as a primary policy only with respect to certain claims *against the insured*: "If

underlying insurance does not cover damages covered by this policy, we will pay damages which exceed the retained limit in item 4 of the Declarations." CP at 271 (emphasis omitted). Thus, where the insured has no liability coverage, the umbrella policy will provide primary coverage up to $1,000,000, subject to the policy's express exclusions and other terms and conditions. But the UIM endorsement clearly functions as an excess policy, providing UIM coverage, payable *to the insured, above and beyond that provided by the underlying insurance*. Whereas liability coverage may be available even where no underlying insurance provides coverage, UIM coverage is only available when there is underlying UIM insurance. Accordingly, with respect to UIM coverage, the underlying insurance is primary and the umbrella insurance is excess insurance that does not provide UIM coverage unless a primary insurance policy does.

¶26 Citing *Cammel v. State Farm Mutual Automobile Insurance Co.*, 86 Wn.2d 264, 270, 543 P.2d 634 (1975), the Estate argues that we should adopt its interpretation because UIM "protects people, not vehicles." Appellant's Reply Br. at 7. The policies at issue in *Cammel* provided UIM coverage regardless of whether the insured was occupying any particular vehicle. The insureds purchased three different policies, each of which provided UIM coverage for an accident that claimed their lives. The court held that the insureds could recover from each of the policies, noting that " '[u]ninsured motorist coverage is designed to protect not vehicles, but persons, *i.e.*, the innocent victims of negligent uninsured motorists.' " *Cammel*, 86 Wn.2d at 270 (quoting *Lipscombe v. Sec. Ins. Co. of Hartford*, 213 Va. 81, 189 S.E.2d 320, 322-23 (1972)), *superseded by statute*, LAWS OF 1980, ch. 117, § 1, *as recognized in Progressive Cas. Ins. Co. v. Cameron*, 45 Wn. App. 272, 281-82, 724 P.2d 1096 (1986). Although it is true that UIM coverage is not limited to a particular insured vehicle, it is nonetheless subject to statutorily permissible exclusions set forth in the policy. Unlike the policies at issue

in *Cammel*, Christal's passenger car policies specifically exclude UIM coverage for claims arising from an uninsured vehicle owned by the insured. The Estate concedes that the exclusion is valid and applies to the motorcycle accident. The principle that UIM "protects people, not vehicles," does not apply to claims arising from an excluded vehicle.

¶27 The Estate also relies on *Mid-Century Insurance Co. v. Henault*, 128 Wn.2d 207, 905 P.2d 379 (1995), involving a person who was thrown from her motorcycle and then run over by a car while she lay on the ground. Although her motorcycle policy did not provide UIM coverage for the incident, the court held that her automobile policy did. To reach that conclusion, the court narrowly construed the automobile policy's exclusion for incidents related to uninsured vehicles owned by an insured, reasoning that the insured was no longer "occupying" her motorcycle when she was struck by a car. *Mid-Century Ins.*, 128 Wn.2d at 209. The case is distinguishable because, here, the Estate concedes that the motorcycle accident is excluded from the underlying insurance policy's UIM coverage. Moreover, unlike *Mid-Century Insurance*, this case involves an umbrella policy exempt from the UIM statute. *See* RCW 48.22.030(2) (mandatory UIM coverage "is not applicable to general liability policies, commonly known as umbrella policies"). At issue is whether the umbrella policy *extends* UIM coverage to the incident, not whether the automobile policy *excludes* it. The principles of liberally construing the UIM statute in favor of coverage and construing policy exclusions against the insurer do not apply.

¶28 Finally, the Estate argues that the trial court improperly relied on extrinsic evidence in making its decision. The Estate bases this assertion on language from the trial court's memorandum of decision. The trial court stated:

> [T]he Court believes it is clear that the umbrella does extend to the [passenger vehicles] but does not extend to the operation of the motorcycle. To reach that conclusion, specific policies are in the declaration sheet and the fact that premiums are charged

for that specific [UIM] coverage, both on the underlying insurance as well as the umbrella. The coverage and the operation of the motorcycle is a different risk not contemplated by the insurance company.

CP at 332-33.

¶29 The Estate objects to the statement because Farmers presented no extrinsic evidence on what it had "contemplated" in drafting the policy. This argument fails. The trial court properly relied on its common sense, not extrinsic evidence, to infer the parties' reasonable expectations regarding the scope of coverage. In doing so, the trial court applied a form of analysis routinely used in construing insurance policies. *See, e.g., Butzberger*, 151 Wn.2d at 405 (" '[c]ommon sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage' " (quoting *Hartford Accident & Indem. Co. v. Booker*, 140 Ga. App. 3, 230 S.E.2d 70, 73 (1976))).

### Attorney Fees

¶30 The Estate requests attorney fees under RAP 18.1(a). An insured is entitled to recoup attorney fees when forced to file suit to obtain benefits of an insurance contract. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991). Because we hold that coverage does not apply here, we do not award fees.

¶31 Affirmed.

ARMSTRONG and PENOYAR, JJ., concur.

Review denied at 159 Wn.2d 1008 (2007).